UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EUGENE ROSS, | |
| Plaintiff, | No. 17 C 7756 |
| v. | Judge Thomas M. Durkin |
| GEORGE ADAMSON, Chaplin of Stateville Correctional Center; and WALTER NICHOLSON, Warden of Stateville Correctional Center, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Eugene Ross is incarcerated at Stateville Correctional Center. He alleges that he has been deprived of his right to be provided religious meals and to other aspects of practicing Islam. The parties have filed cross motions for summary judgment. R. 65; R. 72. Ross's motion is granted, and Defendants' motion is granted in part and denied in part.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of

evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

Ross alleges that Defendants violated the Religious Land Use and Institutionalized Persons Act, the Free exercise Clause of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment, when they: (1) denied his request for a halal diet; (2) denied his request to wear a kufi hat other than in his cell and during religious services; and (3) failed to hire a permanent Muslim imam to conduct those services. *See* R. 78 at 1. Ross also alleges retaliation for filing complaints about these circumstances by removing him and other Muslim inmates who had also filed complaints from an Islamic studies class.

## Analysis

### I. Local Rule 56.1

Defendants argue that Ross's Statement of Material Facts should be stricken for failure to comply with Local Rule 56.1 and the Court's individual case procedures. Specifically, Defendants contend that: "(1) Plaintiff repeatedly misstates and/or mischaracterizes the evidence in the record; (2) many of Plaintiff's facts are unsupported because he fails to provide record citations and/or cites to evidence that does not actually support his statements; (3) Plaintiff relies exclusively on

inadmissible hearsay to support numerous statements, and (4) Plaintiff fails to comply with the Court's Standing Order, which states that 'To the extent possible, briefs and other filings (such as Rule 56.1 statements of fact) should cite exhibits by the ECF docket number and page, not exhibit number.'" R. 79 at 2-3. Striking Ross's State of Material Facts would result in Ross failing to meet his burden under Rule 56.

First, Defendants do not cite any specific instance of any mischaracterization of the evidence by Ross. Even if they had, this might be a basis for the Court to rule against Ross on the merits, but it does not raise an issue of compliance with Local Rule 56.1. Second, the paragraphs in Ross's statement Defendants contend are unsupported do in fact reference evidence in the record. The Court has had no difficulty in determining what evidence Ross relies on here. Whether that evidence actually supports Ross's assertions is a question for the Court on the merits. Similarly, whether Ross has inappropriately cited hearsay is also a question on the merits. Lastly, to the extent Ross has not complied with the Court's request that parties cite exhibits by their docket number, he is certainly not the first party to fail to comply with this request. The Court considers this a matter of best practice and convenience for the Court and parties, not a basis to deny summary judgment.

The Court has been able to understand Ross's statement of material facts and to examine the evidence supporting Ross's motion with relative ease. Defendants' complaints about his statement of facts are either incorrect or put form over substance. The Court rejects Defendants' request to strike Ross's statement of facts.

## II. Exhaustion

In October and November 2015, Ross received letters from Assistant Warden Nicholas Lamb. *See* R. 65-1 at 53, 55. The first letter referenced Ross's "recent correspondence," and responded that the Illinois Department of Corrections ("IDOC") "does not provide Halal meals at this time," but that there are "'pork free' and vegetarian options available that may further be supplemented with commissary items." *Id.* at 53.

The second letter referenced Ross's "recent face to face communication with the Assistant Wardens regarding an issue or concern that you expressed to either the Director's Office or Governor Rauner's Office." *Id.* at 55. Ross testified at his deposition that at some point in 2015, Governor Rauner sent a delegation to Stateville in response to a letter Ross and other inmates sent to the Governor about the complaints in this case. *See* R. 65-1 at 21-22 (26:1–32:15). There is no other evidence in the record that Ross communicated with the Governor's office or that a delegation from the Governor's office visited Stateville. Lamb's second letter reiterated that the IDOC "does not provide Halal meals at this time," and again referred Ross to the commissary options. Lamb also stated that the "commissary supervisor was informed to re-order the Halal Sausage." *Id.*

In 2016, Ross filed a formal grievance raising the claims he brings in this case. The IDOC provides inmates a two-track grievance process: (1) the standard process that begins with a counselor and Grievance Officers; and (2) the emergency process that goes directly to the Warden. *See Williams v. Wexford Health Sources, Inc.*, 957

4

F.3d 828, 831 (7th Cir. 2020). Ross submitted an emergency grievance on July 21, 2016. *See* R. 65-1 at 36-37. Five days later, the Warden's administrator rejected the grievance upon a finding that it did not constitute an emergency. *Id.* at 36.

Ross apparently appealed this rejection to the Administrative Review Board ("ARB"), because on August 16, 2016 the ARB "returned" Ross's grievance stating that Ross needed to include documents he would have received had he filed his grievance through the non-emergency process. *Id.* at 41. Ross responded by resubmitting his grievance to the ARB. *Id.* at 45. On September 14, 2016, the ARB responded further by again stating that Ross needed to submit standard grievance process documents. *Id.* at 47. Two weeks later, Ross responded to the ARB explaining that he did not have the documents the ARB sought because he had filed his grievance directly with the Warden on an emergency basis. *Id.* at 48. Ross filed this case on October 27, 2017.

Defendants argue that Ross failed to properly exhaust his claims because "IDOC policy clearly states that when a grievance filed as an Emergency Grievance is returned to an inmate because it has not been deemed an emergency, the inmate is to follow the standard grievance procedure beginning with filing his grievance with his grievance counselor." R. 79 at 9. The problem with this argument is that the policy Defendants reference was implemented in 2017, after Ross filed his grievance. *See Williams*, 957 F.3d at 832. In *Williams*, the Seventh Circuit held that prior to 2017, IDOC policy did not clearly state that an inmate whose emergency grievance was deemed not to be an emergency was required to start over with the standard

5

procedure. *Id.* For that reason, the court reversed a district court's dismissal of an inmate's civil rights complaint whose exhaustion efforts consisted of an emergency grievance that was rejected for not being an emergency. Ross's scenario is sufficiently similar to find that he exhausted his claims.

The Seventh Circuit cautioned, however, that a "frivolous assertion of emergency would present an entirely different problem." *Id.* at 835. The Court asked the parties here for additional briefing on whether Ross's claim of an emergency was frivolous, considering the fact that he alleges that he has been a devout Muslim since 1997, but only filed the relevant grievance in 2016. *See* R. 84. While this timing made the Court suspicious of Ross's sincerity, upon further consideration, the Court finds that suspicion unjustified.

The Illinois Administrative Code states that a prisoner may file an emergency grievance if there is "a substantial risk of imminent personal injury or other serious or irreparable harm to the offender." 20 ILCS § 504.840. This is not a case of "imminent personal injury." But questions of religious practice, particularly those concerning diet, could be considered "serious." Regardless of whether Ross's claims meet the statutory definition of "serious," it is not frivolous to make that claim. This is particularly true because Ross is not a trained attorney. It is inappropriate to penalize him for failing to properly make fine terminological distinctions. Because it was not frivolous for Ross to believe that his claims constituted emergencies, the emergency grievances he filed were sufficient to exhaust the claims in this case.

6

### III. Halal Meals

To survive summary judgment on his claim for halal meals, Ross must "submit evidence from which a jury could reasonably find that the defendants personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) (citing *Hernandez v. Comm'n of Internal Revenue,* 490 U.S. 680, 699 (1989)). "A substantial burden 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Thompson*, 809 F.3d at 379-80 (quoting *Thomas v. Review Bd.,* 450 U.S. 707, 717-18 (1981)). A substantial burden on religious exercise is only permissible if it "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." *Holt v. Hobbs*, 574 U.S. 352, 357 (2015); *Jones v. Carter*, 915 F.3d 1147, 1149 (7th Cir. 2019).

The Seventh Circuit has "repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden." *Thompson*, 809 F.3d at 380 (citing cases). Defendants do not attempt to distinguish this precedent or address it all. They simply argue that Ross "has failed to establish that the IDOC has a No-Halal policy." R. 79 at 7. But Defendants do not dispute that Assistant Warden Lamb twice stated in letters to Ross that the IDOC "does not provide Halal meals at this time." Instead, Defendants contend that the availability of "pork free" and vegetarian meals and other items in the commissary allows Ross to "tailor his diet to his religious beliefs." *Id.* But the Seventh Circuit has also held that providing vegetarian meals and halal food items for sale does not ameliorate the

7

burden imposed. In affirming a verdict after a bench trial on this precise issue, the Seventh Circuit explained that "there can be no doubt that when the state forces a prisoner to give away his last dime so that his daily meals will not violate his religious practice, it is imposing a substantial burden." *Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019).

Defendants concede any argument that they have a compelling interest in not providing halal meals. *See* R. 79 at 7 ("Defendants need not show a 'compelling government interest' because they have not imposed a substantial burden on Plaintiff's right to exercise his religion."). Ross argues that providing halal meals will not increase the IDOC's costs, relying on a letter his attorney sent to the IDOC summarizing research on this issue. *See* R. 65 at 12-14 (citing *id.* at 80). Defendants argue that this is inadmissible hearsay. Perhaps this is true. But Defendants do not contest this information, even though they are in possession of the relevant data. Instead, Defendants only generally state that they "maintain that providing religious-specific diets for all inmates in the IDOC would place an undue burden on the institutions and staff within the IDOC." R. 79 at 8. Defendants have failed to meet their burden to demonstrate a compelling interest justifying the policy against providing halal meals.

Therefore, because Ross has shown a substantial burden, and Defendants have failed to show a compelling interest, summary judgment is granted to Ross on his claim that Defendants violate his federal rights by not providing halal meals.

**IV.    Kufi Hat**

Defendants do not dispute that Ross is not allowed to wear a kufi hat outside his cell unless he is attending a religious service. *See* R. 82 at 4. Defendants argue that Ross "has failed to articulate what burden, if any these rules bear upon him." *Id.*

As discussed, a "substantial burden 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Thompson*, 809 F.3d at 379-80 (quoting *Thomas,* 450 U.S. at 717-18). Defendants do not dispute that Ross sincerely holds the belief that he must wear a kufi hat. Defendants contend, however, that a "Muslim male can practice Islam without wearing a head covering." R. 74 at 8. But whether a practice is "central" to the religious practice is irrelevant under federal law. *See Cutter v. Wilkinson*, 544 U.S. 709 725 n.13 (2005).

Defendants also do not dispute that Ross must be able to leave his cell from time to time. By prohibiting Ross from leaving his cell while wearing a kufi, Defendants have substantially burdened Ross's religious practice. *See Ali v. Stephens*, 69 F. Supp. 3d 633, 644 (E.D. Tex. 2014), *aff'd,* 822 F.3d 776 (5th Cir. 2016); *Ajala v. West*, 106 F. Supp. 3d 976, 981 (W.D. Wis. 2015); *Caruso v. Zenon*, 2005 WL 5957978, at *18 (D. Colo. July 25, 2005); *Malik v. Ozmint*, 2008 WL 701517, at *11 (D.S.C. Feb. 13, 2008), *report and recommendation adopted,* 2008 WL 701394 (D.S.C. Mar. 13, 2008), *aff'd,* 289 F. App'x 662 (4th Cir. 2008). Defendants cite no authority to the contrary.

Defendants argue that they have a compelling interest in limiting the wearing of kufis. They contend that "the regulations are rationally related to concerns for the

9

safety and security of the institution," including "the potential to hide one's identity and the need to deter and limit the influence of security threat groups." R. 74 at 8. The Seventh Circuit reversed a district court's grant of summary judgment that was based on arguments similar to Defendants' here. The court found that because "gang information may be widely available already [through tattoos, hand signals, and speech], it is difficult to depict as 'compelling' a desire to cut out one potential means of identification." *Schlemm v. Wall*, 784 F.3d 362, 366 (7th Cir. 2015). Further, similar to the plaintiff in *Schlemm*, Ross suggests that Defendants establish regulations for kufis such that it will be impossible to confuse them with gang symbols. As the Seventh Circuit held, "as long as the [headgear] is free of any gang significations it is hard to see a 'compelling' need to prohibit its use." *Id.*

*Schlemm* concerned a prison regulation that barred certain religious headgear entirely, even in a cell and during religious services. Ross asks to wear a kufi at all times. So *Schlemm* is not sufficient authority to grant summary judgment to Ross. But it is sufficient authority to deny Defendants' motion for summary judgment on this claim and set it for trial.

## V.     Imam Availability

Ross claims that "Defendants violated the First Amendment and the Equal Protection Clause of the Fourteenth Amendment by failing to hire a permanent Muslim imam and only hiring permanent Christian and Jewish chaplains." R. 78 at 12. "Prisons need not provide every religious sect or group within a prison with identical facilities or personnel and need not employ chaplains representing every

faith among the inmate population." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (citing *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972)). "A plaintiff doesn't state a cause of action under the First Amendment merely because a prison allocates a disproportionately smaller amount of its religious budget to certain sects or provides clergy for one religion and not another." *Maddox*, 655 F.3d at 19. Courts must "examine the facts in the aggregate to determine whether, based on the totality of the situation, the defendants denied [the plaintiff] a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to [Christian and Jewish] religious precepts." *Id.*

Ross argues that Defendants' reliance on volunteer imams resulted in irregular provision of Muslim services, and that Defendants knew this would be the result of relying on volunteers, by which Ross presumably means to infer that Defendants intended this result. *See* R. 78 at 14. Defendants do not dispute that provision of Muslim services was irregular. They contend that this irregularity could also have been caused by "lock-downs and other security concerns." R. 74 at 11. But even assuming that the irregular scheduling of services was due entirely to the reliance on volunteer imams, there is insufficient evidence that this deprived Ross of a "reasonable opportunity" to practice his faith. What is reasonable is determined in comparison to the religious facilities and personnel provided to other sects in light of the prison's budget for such amenities. Ross has provided no evidence in this regard. Based on the evidence that is in the record, the Court must assume that Defendants have funds to hire only two religious officials. Ross concedes that Christian and

Jewish inmates are the two largest sects in the prison, so it makes sense that Defendants would hire Christian and Jewish ministers. Common sense says that volunteers would appear to be the next best option. Ross makes no other suggestion. Therefore, summary judgment is granted to Defendants on this claim.

## VI. Retaliation

Ross testified at his deposition that Governor Rauner sent a delegation to Stateville to investigate allegations Ross and other inmates made in a letter they sent to the Governor. Other than Ross's testimony, there is no evidence in the record that these events occurred. Ross claims that he was removed from an Islamic studies class and prohibited from attending religious services in retaliation for contacting the Governor. The only evidence that Ross was removed from the class because he contacted the Governor is Ross's testimony, and he does not explain how he knows that this was the reason he was removed from the class.

Defendant Adamson states in a declaration attached to Defendants' motion that Ross was removed from the Islamic studies class because the class ended. *See* R. 73-4 at 3 (¶ 6). Ross has not presented any evidence to the contrary.

For purposes of this motion, the Court must believe that Ross sent the letter and that the Governor sent a delegation in response, although it is hard to believe that these events occurred without any evidence other than Ross's memory. In any event, Ross's claim that Adamson removed him from the class in retaliation is pure speculation. Ross testified to no basis for this belief other than his own suspicions. Suspicions are insufficient to defeat summary judgment.

Furthermore, Ross has not meaningfully responded to Adamson's assertion that the class concluded and that this was the reason Ross could no longer attend. Ross's only response is that he is "unable to confirm or deny" whether this is true. R. 78-1 at 2 (¶ 13). The only direct evidence in the record of the reason Adamson removed Ross from the class is Adamson's statement that the class ended. Ross has failed to rebut this evidence. For these reasons, summary judgment on this claim is granted to Defendants.[1]

## Conclusion

Therefore, Ross's motion for summary judgment on his claim for halal meals [65] is granted. Defendants' motion for summary judgment [72] is denied in part and granted in part. Defendants' motion on Ross's claim for kufi hats is denied, and Defendants' motion for summary judgment on Ross's claims for provision of imams and retaliation is granted. A status hearing is set for October 15, 2021. The parties should meet and confer prior to that date and be prepared to tell the Court how they would like to proceed with the case.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: September 30, 2021

---

[1] To the extent Ross intended to bring a claim about disparate treatment of Muslims with respect to work assignments, he failed to respond to Defendants' motion on that claim, so summary judgment is granted to Defendants.